VENTERS, J.,
DISSENTING:
I join Justice Cunningham’s dissent, and to his voice, I add my concern about the majority’s distortion of a statute that is crystal clear in its meaning and effect. Few if any statutes are as concise and unambiguous as KRS 510.140, both as it stands alone and when read in context with the whole of KRS Chapter 510. It makes perfect sense as.written and requires none of the excess verbiage grafted onto it by the majority opinion. “When the statute is plain and unambiguous, the language of the statute is to be given full effect as written .... This Court should not resort to the task of deciphering legislative intent in order to interpret the language of a statute which is abundantly clear.” Mohammad v. Commonwealth, 202 S.W.3d 589, 590 (Ky.2006) (citations omitted). The LRC Commentary is to be used “as an aid in construing provisions” of the penal code, KRS 500.100, but the majority arrogates the commentary to the dignity of the statute itself. Moreover, it does so in derogation of the plain language of the statute, apparently because it disagrees with the obvious meaning of the plain language. Worse yet, the majority’s interpretation of the commentary is just plain wrong.
KRS Chapter 510 set forth a judiciously crafted schedule of graduated offenses designed to punish a wide range of unacceptable acts of sexual aggression. It comprehensively matches the severity of punishment for the offender with the egregiousness of his conduct, scaling the offenses based upon specific factors: the degree of force used by the perpetrator; the degree to which the victim suffered physical injury; the unique vulnerability of the specific classes of victims (for example, children and physically helpless or mentally incapacitated adults); the age of the perpetrator in relation to the victim; and the perpetrator’s abuse of a position of authority or special trust relating to the victim.
Within this cohesive and interlocking structure, the offenses of unlawful sexual intercourse range from Rape in the First Degree for the perpetrator who uses forcible compulsion to overpower the victim and causes the victim to suffer serious physical injury (or whose victim is physically helpless or less than 12 years of age) under KRS 510.040, through Rape in the Second Degree under KRS 510.050 and Rape in the Third Degree under KRS 510.060, to Sexual Misconduct under KRS 510.140 for the perpetrator who, without forcible compulsion, engages another person in an act of sexual intercourse or sodomy without that person’s consent. Each descending step from first degree rape to sexual misconduct involves a progressively lesser sentence reflecting the General Assembly’s judgment of progressively less injurious or less egregious conduct. Given the meticulous specificity employed by the legislature to delineate each of the crimes established in Chapter 510, it is inconceivable that such a critical limitation as the one that the majority reads into KRS 510.140 was simply left unstated, to be deciphered like a secret code hidden, not in the language of the statute, but in commentary.
The plain language of KRS 510.140 as it is plainly written dovetails precisely into the legislative scheme. It makes perfect sense within the spectrum of crimes laid out by the legislature. It criminalizes the offensive act of having sexual intercourse with one who had not consented even when the perpetrator did not resort to forcible compulsion or physical injury, but has instead simply acted without the victim’s *471 permission. The language of the statute alone is plain and complete, enabling any reasonable person to discern its meaning. Nevertheless, the majority strips the law of its simplicity and shrouds it under a complex construction based upon a faulty interpretation of the legislative commentary.
The commentary explains that the statute was “designed primarily” for noncon-sensual intercourse in the two specific situations identified by the majority. However, “primarily” does not mean exclusively, the use of the word “primarily” expressly signifies the existence of other, albeit secondary, applications. One such application is identified in the very first paragraph of the commentary relied upon by the majority: “[KRS 510.140] provides a useful plea-bargaining tool ... in certain cases even though some degree of forcible compulsion or incapacity to consent may be present.”
Those “certain cases” would be situations like the instant case where fitting the perpetrator’s conduct into the statutorily definition of “forcible compulsion” is a close call at best, and one which the jury may not readily accept. The majority’s strained and complex construction restricts the application of KRS 510.140 to situations involving minors and others incapable of consent, thereby eliminating the offense of sexual misconduct for other classes of victims in cases where a finding of “forcible compulsion” is far from certain, but a lack of consent is clear. As Justice Cunningham explains in his dissenting opinion, without the option provided by KRS 510.140, jurors (and sometimes prosecutors and judges) in such cases who cannot conscientiously regard the perpetrator’s conduct as “forcible compulsion” will feel bound to acquit, leaving the victim of unwelcome sexual aggression without justice.
Sexual misconduct is a crime created by the General Assembly as a lesser-included crime within the spectrum of rape offenses applicable when the victim did not consent to intercourse (or sodomy) and the proof of forcible compulsion is less than compelling. KRS 510.140 expresses the General Assembly’s intent to criminalizing the conduct of those who, while not resorting to “forcible compulsion,” nonetheless act reprehensibly to deprive a victim of her right to say “no” and the sexual dignity that goes with that right.
Despite the plain delineation of the legislature to the contrary, the majority seems to believe that every act of noncon-sensual sexual intercourse is inherently an act of “forcible compulsion,” thus eliminating the crime of sexual misconduct in all but the few applications involving juvenile victims and youthful perpetrators. By writing its belief into the law the majority casts itself into the role of the legislature, putting words into the statute in derogation of the legislature’s preference and diminishing the prospects for justice for both the perpetrator and the victim in close cases like this one. For these reasons, I respectfully dissent and join the dissent of Justice Cunningham.
Cunningham, J., joins.